[J-59-2016] [MO: Todd, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.R.D. AND T.M.D., MINOR CHILDREN | : | No. 26 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court at No. 1728 MDA 2013 dated |
| APPEAL OF: M.C., NATURAL FATHER | : | December 8, 2015 Affirming the Order |
| | : | of the Lycoming County Court of |
| | : | Common Pleas, Orphans Division, at |
| | : | No. 6365, dated August 19, 2013. |
| | : | |
| | : | ARGUED:  May 10, 2016 |

**CONCURRING OPINION**

**JUSTICE BAER**                                                              **Decided: August 29, 2016**

I concur in the result, as I agree that the Adoption Act, 23 Pa.C.S. §§ 2101-2938, precludes termination of Father's parental rights to allow Grandfather to adopt the children and become a parent together with Mother.  I write separately to explain my analysis because I believe the majority's test would allow for third-party adoptions not permitted by the Adoption Act.  Additionally, I write to express my disagreement with the special concurrence's call upon the legislature to allow for termination of a parent's rights when there is no contemplated adoption.

To me, this case is straight-forward.  The question we must answer is whether Mother and Grandfather may be legal co-parents of the children.  The answer to that question is "no" because the statute allows Mother to be a legal co-parent only with her spouse.  See 23 Pa.C.S. § 2711(a)(3), (d)(1) (requiring a parent to relinquish parental rights when her child is adopted by another party); 23 Pa.C.S. § 2903 (providing an exception to the relinquishment requirement "[w]henever a parent consents to the adoption of his child by his spouse").  As Grandfather is not and never can be Mother's

spouse, he may never be a legal parent of these children together with Mother. Accordingly, there can be no adoption, and, therefore, Father's rights cannot be terminated because the Adoption Act, supported by wise public policy, mandates that children maintain two parents.

In my opinion, the majority places undue emphasis on In re Adoption of R.B.F., 803 A.2d 1195 (Pa. 2002), which did not involve termination of parental rights, and is not controlling under the facts of this case. In R.B.F., the children at issue had only one parent, and the same-sex, long-term committed parties sought to add a second parent. The R.B.F. court opined that not allowing the couples at issue an opportunity to excuse the statutory requirement that the biological parent relinquish his rights unless the adopting party was his spouse seemed absurd because the couples "could have filed their adoption petitions with the requisite unqualified consent of the legal parent, including the relinquishment of parental rights, and then seek to adopt their children jointly." R.B.F., 803 A.2d at 1203.

Moreover, R.B.F. did not hold that same-sex couples, in fact, necessarily established cause to excuse the spousal requirement; but rather held that Section 2901 of the Adoption Act "affords the trial court discretion to determine whether, under the circumstances of a particular case, cause has been shown to demonstrate why a particular statutory requirement has not been met." R.B.F. at 1197 (discussing 23 Pa.C.S. § 2901). Ultimately, we remanded to the trial court to determine whether the petitioning same-sex couples could "demonstrate, by clear and convincing evidence, cause as to whether the purpose of Section 2711(d)'s relinquishment of parental rights requirement will be otherwise fulfilled or is unnecessary under the particular circumstances of each case." Id. at 1203.

In the case before us, distinct from R.B.F., the spousal exception to the relinquishment requirement is neither fulfilled nor unnecessary because Grandfather stands in a completely different relationship to Mother than that contemplated by the statute. Here, the spousal requirement does not create an absurd result, as it did in R.B.F. where there was no other legal parent and the law then extant prohibited same-sex couples from marrying. Instead, the spousal requirement in this scenario functions exactly as the legislature intended: to prevent individuals who are not spouses of a parent from adopting together with the parent. Thus, Mother and Grandfather cannot establish cause pursuant to Section 2901 to excuse the requirement that the adopting party in this situation be Mother's spouse.

Accordingly, I respectfully disagree with the majority's proposition that the Section 2901 "cause analysis" when a parent seeks to excuse the spousal requirement is whether the contemplated adoption will "promote a new family unit." Maj. Op. at 19. This language is not present in Section 2901 or any other provision in the Adoption Act. If this were the test, then a parent could terminate the other parent's rights in favor of a long-term, live-in partner so long as the parties intended to live together with the adopted child(ren) as a family. The statute simply does not support this scenario, and our decision applying Section 2901 expressly admonished against such an interpretation of the cause analysis. R.B.F., 803 A.2d at 1202 (noting our decision "does not open the door to unlimited adoptions by legally unrelated adults").

Relatedly, I note that the majority equates partners with spouses, so as to imply that R.B.F. established that long-term committed partners could show cause to excuse the spousal requirement under these circumstances. See Maj. Op. at 20 ("[R]ather than being involved in a committed, horizontal relationship such as stepparents or same-sex partners, Mother and Grandfather share a vertical, parent-child relationship."). With

great admiration for my distinguished colleagues, I am constrained to disagree. The Adoption Act does not excuse the spousal requirement for long-term committed couples, and neither did R.B.F. R.B.F. simply held that same-sex couples were not necessarily precluded from adopting as co-parents at a time when they could not marry and where there was no second legal parent whose rights had to be terminated. As this case does not present us with a long-term committed partner, and we have never decided that a long-term committed partner necessarily could excuse the spousal requirement, I would not speak to the issue.

We should acknowledge and applaud the wise public policy adopted by our legislature in the Adoption Act: the ideal family for children is two parents together in an intact marriage. This may be a traditional notion, but it is rooted in the belief that children benefit from permanency. See, e.g., 42 Pa.C.S. § 6301 (setting forth one of the purposes of the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, is "[t]o preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained"); In re T.S.M., 71 A.3d 251, 269 (Pa. 2013) (acknowledging the "the need [in dependency proceedings] to expedite children's placement in permanent, safe, stable, and loving homes"). Even in a modern age where non-traditional families may exist, marriage is the best legal proxy of permanency for children. It is much more difficult to extricate one's self from a marriage than cohabitation. Notwithstanding, my discussion should not be read as disparaging non-traditional families. Like my colleagues, I appreciate that families of all varieties can and do flourish. Nevertheless, it is beyond cavil that children are entitled to permanency, and the best model to ensure that permanency is to have children parented by two parents in a permanent relationship—a marriage.

Because of my strong belief that the Adoption Act strikes the proper balance of seeking permanency for children and protecting them when necessary, I disagree with the special concurrence's call upon the legislature "to revisit the adoption and relinquishment requirements for termination of parental rights under the [Adoption] Act" to allow for single parents to terminate the other parent's rights without the requisite contemplated adoption.[1]  Slip. Op. at 2 (Todd, J., specially concurring).  The special concurrence's request seems to overlook that the interests of children supersede the interest of parents.  In light of the benefits that come with two parents, even when one is absent, I believe our legislature has adopted a child-focused statute which should not be changed.

In my view, the law is loath to leave children with only one parent, as children derive no benefit from having a parent's rights terminated, unless a new, committed parent is ready, willing and able to take that terminated parent's place.  Terminating a parent's rights, even one who is currently uninvolved in the child's life, removes the child's ability to inherit from and through that parent as well as the potential of future emotional and financial support from that parent.  Terminating an uninvolved parent's rights does not remedy any harm caused by that parent's absence in the child's life.  The only benefit of terminating a non-involved parent's rights without substituting a new parent is arguably to the involved parent: it removes the involved parent's fear that the non-involved parent will have a change of heart and want a relationship with the child (which may, in the long term, benefit the child); it removes the risk to the involved parent of having to litigate child custody; it dispels the involved parent's feeling that his or her efforts are underappreciated in the eyes of the law, etc.

---

[1] I note that Mother did not argue this point, and therefore, my discussion is in response to the special concurrence's assertions only.

The special concurrence's call upon the legislature to allow termination of parental rights without substituting a new parent focuses on the involved parent and contains no discussion of a purported benefit to children: "[I]n today's society, . . . there are situations where . . . it is unfair to require a single parent to have a spouse or partner as a prerequisite to seeking the termination of the rights of the child's other legal, but absent, parent."  Slip. Op. at 2.  While I respect and appreciate the vitally important and often-times challenging role of single parents, our laws protecting children are properly focused on the bests interests of children, rather than unfairness to parents.

Moreover, as Justice Wecht aptly articulates in his concurring opinion, allowing one parent to seek termination of the other without spousal substitution will open the door for misuse in domestic relations cases.  It cannot be denied that emotions run high in family court, and parents often blame each other for not doing enough for their children.  If we permit the termination of parental rights simply because one parent accuses the other parent of being a non-involved parent—be it non-payment of child support, failure to exercise custodial rights, or some other omission—then the courts will be inundated with requests to deprive children of one of their parents.  Respectfully, I cannot agree that the legislature should create a cause of action that will allow parents to seek vindication and retribution against each other, at the expense of their children.